# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **AMY DEGON**, | Case No. 3:19-cv-01152-IM |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **USAA CASUALTY INSURANCE COMPANY**, **a Foreign Business Corporation,** | |
| Defendant. | |

Douglas M. Bragg, Frederick M. Millard, Melissa Young, MILLARD & BRAGG, P.C., 419 Fifth Street, Oregon City, OR 97045. Attorneys for Plaintiff.

Damian P. Stutz, Joshua N. Kastan, Lindsey E. Marsh, DKM LAW GROUP, 1050 SW 6th Avenue, Ste. 1100, Portland, OR 97204. Attorneys for Defendant.

**IMMERGUT, District Judge.**

This is an insurance contract dispute between Plaintiff Amy Degon and Defendant USAA

Casualty Insurance Company ("USAA CIC"). The matter comes before the Court on Plaintiff's

Motion for Partial Summary Judgment and Defendant's Motion for Summary Judgment. ECF

60; ECF 63. This Court held a hearing on the parties' motions on December 4, 2020. ECF 122.

For the reasons that follow, Plaintiff's Motion for Partial Summary Judgment is GRANTED IN PART, and Defendant's Motion for Summary Judgment is GRANTED IN PART.

## BACKGROUND

This action arises from Defendant's denial of insurance coverage for a burglary loss claim submitted by Plaintiff. The following facts are taken from the parties' summary-judgment materials.

Plaintiff rented a home in Happy Valley, Oregon, where she lived in May of 2018. Defendant is a Texas-based insurance company. Plaintiff entered into two contracts of insurance with Defendant, a Renters Insurance Policy ("Renters Policy"), and a Valuable Personal Property Policy ("VPP Policy"). The policies provided coverage against loss by theft, subject to terms, conditions, limitations, exceptions, and exclusions. ECF 56 at ¶¶ 6–9.

The Renters Policy provided coverage for personal property up to a $50,000 limit, less a $1,000 deductible. ECF 56-1 at 5. Under the Renters Policy, Plaintiff's duties following a loss included submission of a proof of loss when required by Defendant, and submission of receipts or other proof of ownership or value to Defendant. *Id.* at 23, 41. The Renters Policy states, in pertinent part:

> a. This entire policy shall be void if, whether before or after a loss, the insured has willfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in the case or any fraud or false swearing by the insured relating thereto.
>
> b. All statements made by or on behalf of the insured, in the absence of fraud, shall be deemed representations and not warranties. No such statements that arise from an error in the application shall be used in defense of a claim under the policy unless:

> > (1) the statements are contained in a written application; and
>
> > (2) a copy of the application is endorsed upon or attached to the policy when issued.
>
> c. In order to use any representation by or on behalf of the insured in defense of a claim under this policy, the insurer must show that the representations are material and that the insurer relied on them

ECF 56 at ¶ 32. The VPP Policy provides coverage for jewelry for up to $2,500 in value. *Id.* at

¶ 17. The VPP Policy also states in pertinent part:

> We do not provide coverage to any insured who, whether before or after a loss, has:
>
> > a. intentionally concealed or misrepresented any material fact or circumstance;
> > b. engaged in fraudulent conduct; or
> > c. made false statements;
> > relating to this insurance.

*Id.* at ¶ 29.

On or about May 27, 2018, Plaintiff reported a burglary to the Clackamas County

Sheriff's Department. Roughly three days later, Plaintiff told Defendant that a theft had occurred

at her rental property in Happy Valley. *Id.* at ¶ 15. That same day, Plaintiff opened a claim under

her Renters Policy with Defendant. *Id.* at ¶ 16. This was the fourth theft claim Plaintiff had filed

with Defendant since 2012. *Id.* at ¶ 18.

Plaintiff submitted an initial loss inventory to Defendant on or about June 13, 2018,

shortly after the burglary. *See* ECF 65 at ¶ 7; ECF 65-2 at 2, 7. The inventory listed numerous

high value items purportedly stolen, including a Tag Heuer watch purchased from Fred Meyer

Jewelers three years prior and worth an estimated $1,900. ECF 65-2 at 2. The total estimated

value of items claimed under Plaintiff's Renters Policy exceeded $50,000. ECF 56 at ¶ 16.

Plaintiff's claims were referred to Defendant's Special Investigative Unit ("SIU") around June 25, 2018. An entry in Defendant's internal activity log in June states: "Claimed items/values, Questionable damage, Questionable documents, & Questionable Photos." *Id.* at ¶ 19. Another entry from June 28, 2018, states, "compare all photos and documents submitted in this loss to other prior losses and proof of purch/payment will be needed." *Id.* at ¶ 21. On or about July 3, 2018, Defendant opened a companion claim under the VPP Policy. *Id.* at ¶¶ 16–17. Roughly two days later, Defendant began an internal investigation of Plaintiff's claims based on her prior loss history. *Id.* at ¶¶ 18–19. Around July 31, 2018, as part of the internal investigation, Defendant retained a private investigative service, Veracity Research Company ("VRC") Investigations to investigate Plaintiff's claims. ECF 71 at 73–74; ECF 65 at ¶ 12.

On or about September 21, 2018, Plaintiff submitted an Itemized Statement of Loss to Defendant, which included an inventory of items purporting to be items stolen in the burglary. Included in that statement was a description of a "Womans tag watch" worth $1,900. Plaintiff also submitted a receipt for the watch indicating it was purchased by her former boyfriend, Fred Ayala, at Fred Meyer Jewelers on February 10, 2015. ECF 56 at ¶¶ 23–24.

On or about October 11, 2018, Judy Kimble, a property adjuster for Defendant, called Fred Meyer Jewelers to verify the receipt for the $1,900 Tag Heuer watch. Ms. Kimble discovered that the watch had actually been returned by Mr. Ayala for a full refund on February 16, 2015. *Id.* at ¶ 25; ECF 56-3; ECF 65 at ¶ 10. When confronted with this discovery, Plaintiff said she had no knowledge that the watch had been returned by Mr. Ayala. ECF 56 at ¶¶ 12, 26.

Plaintiff never submitted another receipt for the watch, and on November 19, 2018, requested that Defendant withdraw it from her claims. *Id.* at ¶ 28. On or about November 30, 2018, Defendant denied Plaintiff's claim for reimbursement under the VPP Policy based on its

determination that Plaintiff intentionally misrepresented and/or concealed material facts in the presentation of her claim. *Id*. at ¶ 29. On or about December 28, 2018, third-party entity USAA Savings Bank elected to close Plaintiff's credit card account "due to unacceptable behavior or activity." *Id.* at ¶ 35. That same day, another third-party entity, USAA Federal Savings Bank, closed Plaintiff's checking account. *Id.* at ¶ 36.

Plaintiff contacted Defendant on or about December 30, 2018, to request reconsideration of her claim under the VPP Policy. She told Defendant she had since learned from Mr. Ayala that he had replaced the February, 10, 2015 Tag Heuer watch with a cheaper one purchased from an associate who owed him money. Plaintiff further acknowledged that the watch Mr. Ayala returned to her was not the one she originally believed it to be, and that there was no receipt for the replacement watch. *Id.* at ¶ 30. Defendant still refused to provide coverage under the VPP Policy. On or about March 8, 2019, Defendant also denied Plaintiff's claim for reimbursement under the Renters Policy. The denial was based upon Defendant's determination that Plaintiff willfully misrepresented and/or concealed material facts in the presentation of her claim. *Id.* at ¶¶ 31–32. To date, Defendant has not reimbursed Plaintiff for her claims. *Id.* at ¶ 33.

On June 3, 2019, Plaintiff filed this action against Defendant bringing claims breach of contract, breach of the implied covenant of good faith and fair dealing, and defamation *per se* in Oregon state court. ECF 1-5 at ¶¶ 3–32. Plaintiff seeks $52,500.00 in damages, prejudgment interest, and attorney's fees and costs pursuant to O.R.S. § 742.061 for her breach of contract claims, and economic damages and prejudgment interest for her defamation *per se* claim. *Id.* at 7–8. Plaintiff has withdrawn her claim for noneconomic damages. *See* ECF 42 at 2.

The case was removed to federal court on July 25, 2019, ECF 1, and this Court subsequently denied Plaintiff's motion to remand the case back to state court, ECF 15. On

August 21, 2020, Plaintiff filed a motion for partial summary judgment, ECF 60, and on that same day Defendant filed a motion for summary judgment, ECF 63. Each motion is addressed in turn.

## STANDARDS

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards, Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the [non-movant's] position [is] insufficient . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

When parties file cross-motions for summary judgment, the court "evaluate[s] each motion separately, giving the nonmoving party in each instance the benefit of all reasonable inferences." *A.C.L.U. of Nev. v. City of Las Vegas*, 466 F.3d 784, 790–91 (9th Cir. 2006) (quotation marks and citation omitted); *see also Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 674 (9th Cir. 2010) ("Cross-motions for summary judgment are evaluated separately under [the] same standard."). In evaluating the motions, "the court must consider each party's evidence,

regardless under which motion the evidence is offered." *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011) (citation omitted).

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). If the moving party meets that burden, the non-moving party bears the burden of designating "specific facts demonstrating the existence of genuine issues for trial." *Id.* "This burden is not a light one." *Id.* The Supreme Court has directed that in such a situation, the non-moving party must do more than raise a "metaphysical doubt" as to the material facts at issue. *Id.* (quoting *Matsushita*, 475 U.S. at 586).

## DISCUSSION

### A. Plaintiff's Motion for Partial Summary Judgment

Plaintiff moves for partial summary judgment on Defendant's misrepresentation affirmative defense, coverage of her burglary losses under the terms of her insurance contracts with Defendant, the value of her losses, and her entitlement to prejudgment interest. ECF 60 at 1–2.

#### 1. Defendant's Misrepresentation Defense

The Renters Policy states that the entire policy shall be void if the insured "has willfully concealed or misrepresented any material fact or circumstance." ECF 56 at ¶ 32. Similarly, the VPP policy states that Defendant will not provide coverage to any insured who has "intentionally concealed or misrepresented any material fact or circumstance." *Id.* at ¶ 29. Under Oregon law, "[a] misrepresentation after the loss as to a single material fact will forfeit the entire insurance contract." *Henricksen v. Home Ins. Co.*, 237 Or. 539, 542 n.1 (1964). Pursuant to this doctrine and the express terms of the insurance contracts in question, to prevail on its misrepresentation defense and deny coverage, Defendant must establish, by a preponderance of the evidence, that:

(1) Plaintiff misrepresented or concealed a material fact; (2) Plaintiff did so willingly/intentionally; and (3) Defendant detrimentally relied on the misrepresentation or concealment. *See, e.g.*, *Allstate Ins. Co. v. Breeden*, 216 Fed. App'x. 655, 658 (9th Cir. 2007). The parties do not dispute these elements. ECF 60 at 13–14; ECF 68 at 7–19. Rather, Plaintiff argues Defendant did not detrimentally rely on Plaintiff's misrepresentations, and as a result, Defendant's misrepresentation defense fails as a matter of law.

In the insurance context, reliance "means ordinary reliance." *Eslamizar v. Am. States Ins. Co.*, 134 Or. App. 138, 146 (1995). To demonstrate this, an insurer must have "evidence of a detrimental action or change in position," such as offering coverage, calculating risk, or incurring additional investigation expenses *because of* a plaintiff's misrepresentations. *Id.* "Reliance . . . cannot be proved by asserting, in general, that the insurer relied on an insured to ascertain a loss. Rather, the insurer must show that it changed its position in some way based on the misrepresentation made." *Masood v. Safeco Ins. Co. of Or.*, 275 Or. App. 315, 332 (2015) (citation omitted).

Defendant contends that Plaintiff misrepresented her ownership of a Tag Heuer watch on the initial loss inventory she submitted to Defendant on or about June 13, 2018, shortly after the burglary. *See* ECF 65 at ¶ 7; ECF 65-2 at 2, 7. Defendant argues it has proven a clear change in position based on this misrepresentation. ECF 68 at 15–19. In support of its argument, Defendant points to the declaration of its property adjuster, Ms. Kimble. Ms. Kimble explains:

> I relied on [Plaintiff's] misrepresentations as she continued to pursue her claims, including in communicating with [Plaintiff] up until the final denial decisions were made and in considering [Plaintiff's] representations in her appeals. Further, I relied on [Plaintiff's] submission of a receipt and photograph as proof of ownership of the Tag Heuer watch, and relied on those misrepresentations when I contacted Fred Meyer Jewelers to determine the origin of the replacement watch. In addition, USAA

> CIC retained an external investigative service – VRC
> Investigations – to investigate [Plaintiff's] claims, which included
> interviews of [Plaintiff], her parents, and her neighbors.

ECF 65 at ¶ 12. Defendant also points to its internal records, which show that it retained a private investigative service, VRC Investigations on July 31, 2018, to look into Plaintiff's claims, including her claim of ownership of a Tag Heuer watch. ECF 71 at 73–74. Finally, Defendant points to the declaration of its SIU case manager, Mathew Ferguson. Mr. Ferguson's declaration states "[o]nce USAA CIC was made aware of [Plaintiff's] misrepresentations, it had no choice but to expend additional resources in expanding its investigation to determine if Degon made misrepresentations as to other items in her claims." ECF 66 at ¶ 17.

This evidence does not indicate that Defendant relied on Plaintiff's alleged misrepresentations. Firstly, Ms. Kimble and Mr. Ferguson's conclusory assertions of reliance, without more, are insufficient under Oregon law to demonstrate reliance. *See Allstate,* 216 F. App'x at 660 (holding the conclusory statement of an Allstate representative cannot establish reliance as a matter of law); *Stephen v. Country Mut. Ins. Co.*, No. 3:14-cv-01345-BR, 2017 WL 555992, at *6–7 (D. Or. Feb. 10, 2017) (rejecting an insurance company's conclusory assertions of reliance without supporting evidence to show a change in position).

Further, the record indicates that Defendant's investigatory efforts were initiated for a variety of reasons, and nothing in the record suggests that the alleged watch misrepresentation changed the course of Defendant's actions. It is undisputed that Defendant began an internal investigation of Plaintiff's claims on or about July 5, 2018, which did occur after Plaintiff made her initial alleged misrepresentation to Defendant on June 13, 2018. However, there is no evidence that Defendant was reacting to Plaintiff's statements concerning the Tag Heuer watch when it launched an internal investigation or referred the case to the SIU. In fact, it is undisputed that this internal investigation was triggered "based on *[Plaintiff's] prior loss history*, which at

PAGE 9 – OPINION AND ORDER

the time included at least five separate claims for reimbursement . . . between 2012 and 2018."
ECF 56 at ¶ 18 (emphasis added). Defendant concedes this point readily in other portions of its
summary judgment briefs. *See* ECF 63 at 32–33 ("As part of USAA CIC's normal process, the
case was *automatically referred* to [the Special Investigation Unit] *based on [Plaintiff's] claims
history*.") (emphasis added).

While the record includes evidence that Defendant retained an external investigative
service, VRC, to support this internal investigation, ECF 71 at 73–74; ECF 65 at ¶ 12, there is no
indication that this action was in any way attributable, in whole or in part, to Plaintiff's
misrepresentation regarding the Tag Heuer watch on June 13. In fact, Defendant's own internal
documents reveal that VRC was retained to investigate numerous aspects of Plaintiff's claim. An
internal "workplan" Defendant prepared for VRC indicates the private firm was tasked with
verifying several aspects of Plaintiff's claim, including whether or not she was visiting her
mother on Memorial Day at the time of the loss, Plaintiff's employment and financial history,
and whether or not Plaintiff initiated a police report for the May 2018 burglary. ECF 71 at 73.
Further, the workplan notes Plaintiff "has many high-end (GUCCI) items she claimed stolen.
Need to ensure we get the receipts or [Plaintiff] will need to contact store locations to acquire
invoices." *Id.* There is no mention in the workplan of the Tag Heuer watch. Thus, there is no
indication that Defendant's decision to retain VRC was influenced, in whole or in part, by
Plaintiff's alleged misrepresentation regarding ownership of a singular watch.

At most, Defendant can attribute Ms. Kimble's October 11 phone call to Fred Meyer
Jewelers as an investigative action fairly linked to Plaintiff's claimed ownership of the watch.
However, this Court is unaware of any case suggesting that one phone call is enough to establish
reliance under Oregon law. Indeed, Defendant conceded this point at oral argument. *See also*

*Allstate Ins. Co.*, 316 F. App'x at 660 ("Allstate bears an obligation to investigate claims; fulfilling this duty cannot constitute detrimental reliance"). Moreover, the record indicates this phone call was conducted in the normal course of Defendant's internal investigation generally, which Defendant itself attributes to Plaintiff's claims history, rather than Plaintiff's claimed ownership of the Tag Heuer watch.

The record suggests Defendant was suspicious of Plaintiff's claims from the beginning, and does not reveal any additional action or change in position in reliance on Plaintiff's alleged misrepresentation. *See Chaney v. Fields Chevrolet Co.*, 258 Or. 606, 611–12 (1971) (finding no reliance where plaintiff knew all along that the defendant's claim was inaccurate, conducted investigations, and never paid on defendant's claim). Defendant never made any advance payments to Plaintiff. Additionally, Defendant has not shown it incurred additional investigative expenses beyond what it would have incurred absent Plaintiff's alleged watch misrepresentation. Even if it had, Defendant does not present any evidence as to what portion of the investigation or any costs associated with it was devoted to investigating the watch, as opposed to other items. *See Masood*, 275 Or. App. at 338 ("Safeco did not provide any evidence that it would not have authorized Malee's work, except for plaintiff's misrepresentations, and, even if it had, Safeco did not present any evidence as to what portion of Malee's time or fee was devoted to investigating the audio/visual system, as opposed to the other systems."). In fact, Defendant does not attempt to quantify those alleged additional costs in any concrete fashion, relying instead on the conclusory assertions of its declarants. *See Allstate*, 216 F. App'x at 660 ("Allstate has submitted no evidence concerning the time and costs of a typical investigation of claims, no quantification of the resources expended in [plaintiff's] case, and no comparison of such figures.").

Put simply, the record is "devoid of evidence that [Defendant] expended funds or time investigating *what it otherwise would not have*," if not for Plaintiff's misrepresentation regarding the watch. *Masood*, 275 Or. App. at 338 (emphasis added). On this record, therefore, the Court concludes Defendant has not raised a genuine dispute of material fact from which a reasonable juror could conclude Defendant relied to its detriment on Plaintiff's alleged misrepresentation, and, therefore, Plaintiff is entitled to summary judgment on Defendant's misrepresentation defense. Because Defendant cannot meet this threshold requirement, the Court need not reach the other arguments raised by Plaintiff concerning the additional elements of Defendant's misrepresentation defense.

### 2. Coverage of Plaintiff's Loss

Plaintiff asks for a court order declaring that her burglary losses were covered by the Renters Policy and the VPP Policy. ECF 60 at 1. In essence, Plaintiff argues there is no dispute she suffered a burglary loss, and under the plain terms of her insurance contracts, her burglary losses are covered. Defendant did not respond to this argument in its pleadings, and at oral argument represented to the Court that it does not object to Plaintiff's contentions. Defendant conceded that Plaintiff did indeed suffer a burglary loss that does qualify for coverage under the Renters Policy and the VPP Policy if its misrepresentation defense is not established. Accordingly, the Court grants Plaintiff's motion on this limited issue. Plaintiff's alleged May 2018 burglary loss was a covered loss under her Renters Policy and VPP Policy with Defendant.

### 3. The Value of Plaintiff's Loss

Plaintiff also asks for summary judgment on the issue of damages related to her breach of contract claim. *Id.* at 8–9; ECF 74 at 6–9. Plaintiff argues her damages pursuant to the Renter's Policy are $50,000.00 and her damages pursuant to the VPP Policy are $2,500.00. ECF 60 at 9. As evidence of the value of her losses, Plaintiff points to her own sworn declaration and two self-

prepared inventories. *See* ECF 61 at ¶¶ 6–8. The inventory lists include each item Plaintiff claims

was stolen in the burglary, as well as its cost and age. *Id.* at Ex. 3. Defendant concedes it has not

conducted a full evaluation of the value of Plaintiff's contents claims, but nevertheless argues

that summary judgment is not appropriate on the issue of damages at this time. ECF 68 at 20–21.

A party moving for summary judgment has the burden of demonstrating there are no

material facts genuinely disputed and that the movement therefore is entitled to judgment as a

matter of law. Fed. R. Civ. P. 56(a). Because Plaintiff bears the burden of proof on the value of

her damages, her burden of production at summary judgment is higher. *See, e.g.*, Charles Alan

Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2727.1 (4th ed.) (explaining "if

the movant bears the burden of proof on a claim at trial, then its burden of production is greater.

It must lay out the elements of its claim, citing the facts it believes satisfies those elements, and

demonstrating why the record is so one-sided as to rule out the prospect of the nonmovant

prevailing.").

Plaintiff has not shown she is entitled as a matter of law to prevail on the value of her

damages. Plaintiff provides only her own estimation of the value of her stolen items. ECF 61 at

¶¶ 7–8; ECF 61, Ex. 3. Given the undisputed fact that Plaintiff claimed ownership of a watch she

no longer owned to USAA CIC, ECF 56 at ¶¶ 24–27, 30, as well as the serious questions the

evidence raises concerning Plaintiff's overall credibility, ECF 68 at 7–13, this Court finds there

is a genuine issue of material fact concerning the value of Plaintiff's losses precluding summary

judgment at this time. *See Hunt v. Cromartie,* 526 U.S. 541, 553 (1999) ("Summary judgment in

favor of the party with the burden of persuasion . . . is inappropriate when the evidence is

susceptible of different interpretations or inferences by the trier of fact."); *see also Dalke v.

Upjohn Co.*, 555 F.2d 245, 248 (9th Cir. 1977) (holding if the evidentiary matter in support of a

motion for summary judgment does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented). Accordingly, the Court denies Plaintiff's motion on this limited issue.

### 4. Prejudgment Interest

Finally, Plaintiff asks for summary judgment on the issue of her entitlement to prejudgment interest should she prevail on her breach of contract claim. ECF 60 at 10–11. Under Oregon law, prejudgment interest may be awarded on a judgment if: (1) the exact pecuniary amount is ascertained or ascertainable by simple computation; and (2) a time of definite default is ascertainable. *Soderhamm Mach. Mfg. Co. v. Martin Bros. Container & Timber Prods. Corp*., 415 F.2d 1058, 1064 (9th Cir. 1969). Plaintiff bears the burden of proof on this issue. *See Farhang v. Kariminaser*, 230 Or. App. 554, 556 (2009). "Where a claim for prejudgment interest depends on the resolution of disputed facts, those facts are within the province of the jury to decide." *Id.* at 557.

At oral argument Plaintiff conceded that if the Court does not find for Plaintiff on the overall value of her claim, then summary judgment is improper on the issue of prejudgment interest. The Court agrees. Given the aforementioned concerns regarding Plaintiff's proof of damages, the Court finds there is a genuine question of material fact concerning whether the exact pecuniary amount of Plaintiff's damages is ascertainable. Plaintiff's motion for summary judgment on the question of prejudgment interest is therefore denied.

### B. Defendant's Motion for Summary Judgment

#### 1. Plaintiff's Breach of Contract Claim

Defendant argues that it did not breach its insurance contracts with Plaintiff because under both the Renters Policy and the VPP Policy it was not liable. ECF 63 at 14–15. It asserts that it is entitled to prevail on this issue because it has established the absence of a genuine issue

of material fact as it relates to each of the necessary elements of its misrepresentation defense. *See Allstate*, 216 F. App'x at 658 (explaining that to avoid coverage under both the terms of the insurance policies and Oregon law, an insurer must establish, by a preponderance of the evidence, that: (1) the insured misrepresented or concealed a material fact; (2) the insured did so willfully; and (3) the insurer detrimentally relied on the misrepresentation or concealment).

Based on this Court's prior analysis concerning Defendant's misrepresentation defense and the necessary element of reliance, the Court denies Defendant's motion for summary judgment on this issue.

### 2. Plaintiff's Breach of Implied Covenant of Good Faith and Fair Dealing Claim

Defendant also asks for summary judgment on Plaintiff's breach of the implied covenant of good faith and fair dealing claim. First, Defendant argues Plaintiff's claim fails because it is foreclosed by Oregon law. ECF 63 at 31. Defendant notes Oregon law does not recognize tort actions between contracting parties, and Defendant therefore argues that an insured may only sue its insurer for breach of contract. *Id.* at 31–32. This argument is plainly without merit.

While it is true that Oregon law generally does not allow for tort actions between contracting parties, *Georgetown Realty, Inc. v. Home Ins. Co.*, 313 Or. 97, 106 (1992), Plaintiff is not bringing a tort action, but an action in contract. The Oregon Supreme Court recognizes a claim for breach of the implied covenant of good faith and fair dealing as a claim sounding in contract. *See Best v. U.S. Nat. Bank of Or.*, 303 Or. 557, 561 (1987) (there is an obligation of good faith in the performance and enforcement of every contract). That obligation discussed in *Best* plainly applies in contractual relationships between insurers and the insured, and has been recognized by the Oregon Supreme Court as a cause of action for the insured under an insurance contract. *See Ivanov v. Farmers Ins. Co. of Or.*, 344 Or. 421, 430 (2008). Plaintiff makes clear in her Complaint she seeks only contract damages and is not asserting a claim in tort. *See* ECF 1-5

at 7. The Complaint clearly pleads the implied covenant claim as one for breach of contract. *Id.* at ¶¶ at 18–23. Plaintiff's claim is not foreclosed by Oregon law.

Defendant next contends that summary judgment is proper because Defendant claims its investigation was reasonable and fair. ECF 63 at 32. The exact contours of the obligation of good faith in the performance of every contract duty are not strictly defined in Oregon law, but "at its heart is each party's obligation to perform the contract . . . in a way that will effectuate the objectively reasonable contractual expectations of the parties." *Pollock v. D.R. Horton, Inc.-Portland*, 190 Or. App. 1, 11 (2003). As the Oregon Court of Appeals explains, "[t]he focus is on the parties' agreed common purpose and justified expectations, both of which are closely related to the express provisions of the contract." *Id.* at 11–12. "The purpose of that duty is to prohibit improper behavior in the performance and enforcement of contracts, and to ensure that the parties will refrain from any act that would have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Klamath Off-Project Water Users, Inc. v. Pacificorp*, 237 Or. App. 434, 445 (2010) (quoting *Iron Horse Eng'g v. Nw. Rubber*, 193 Or. App. 402, 421 (2004)). This duty does not, however, "vary the substantive terms of a contract or require a party to refrain from doing what the contract expressly permits it to do." *Pollock,* 190 Or. App. at 12.

Plaintiff offers several theories to support her claim for breach of the implied covenant of good faith and fair dealing, including that Defendant misrepresented facts or policy provisions in settling her claim, Defendant required her to produce a receipt to prove ownership of a gifted watch, and Defendant conducted its investigation with an aim to delay and avoid the payment of policy benefits. ECF 70 at 22–28. Oregon courts recognize that plaintiffs may bring claims for breach of the implied covenant of good faith and fair dealing premised upon violations of

O.R.S.§ 746.230. *See Ivanov*, 344 Or. at 430. The statute provides that "[a]n insurer or other person may not commit or perform any of the following unfair claim settlement practices" including, "(c) [f]ailing to adopt and implement reasonable standards for the prompt investigation of claims"; and "(d) [r]efusing to pay claims without conducting a reasonable investigation based on all available information." O.R.S.§ 746.230(1).

Viewing the evidence in the light most favorable to Plaintiff and drawing all reasonable inferences in her favor, *Clicks Billiards, Inc.*, 251 F.3d at 1257, there is a genuine dispute of fact regarding the reasonableness of Defendant's investigation, particularly in light of the Court's finding regarding reliance and the extended time it took to settle all of Plaintiff's claims.[1] This claim will turn on Defendant's conduct and Plaintiff's reasonable contractual expectations. *Swenson v. Legacy Health Sys.*, 169 Or. App. 546, 554–55 (2000) (holding that granting defendant's summary judgment motion was inappropriate because defendant's actions could have "frustrated plaintiff's objectively reasonable expectation"); *Tolbert v. First Nat. Bank of Or.*, 312 Or. 485, 494 (1991) (emphasizing that only the objectively reasonable expectations of the parties will be examined to determine whether the obligation of good faith has been met). Accordingly, summary judgment is inappropriate at this time.

### 3. Plaintiff's Defamation *Per Se* Claim

Defendant next asks for summary judgment on Plaintiff's defamation *per se* claim because Plaintiff does not provide any direct evidence that Defendant published false and

---

[1] While Plaintiff initially submitted her claims in May of 2018, and the alleged misrepresentation regarding the watch was discovered by Defendant on or about October 11, 2018, Defendant did not deny her claim under the Renters Policy until March of 2019. ECF 56 at ¶¶ 15, 25, 32. Defendant denied Plaintiff's claim under the VPP Policy on or about November 30, 2018. *Id.* at ¶ 29.

defamatory information to third-parties, and even if she could provide such evidence, Plaintiff

consented to the publication of such statements. ECF 63 at 33.

Under Oregon law, a defamation claim has three elements: (1) the making of a

defamatory statement; (2) publication of the defamatory material to a third party; and (3)

resulting special harm, unless the statement is defamatory *per se* and therefore gives rise to

presumptive special harm. *Lowell v. Wright*, 306 Or. App. 325, 331 (2020) (citation omitted). A

defamatory statement is one that would subject the plaintiff "to hatred, contempt or ridicule [or]

tend to diminish the esteem, respect, goodwill or confidence in which [the plaintiff] is held or to

excite adverse, derogatory or unpleasant feelings or opinions against [the plaintiff]." *Farnsworth*

*v. Hyde*, 266 Or. 236, 238 (1973). *Per se* defamatory statements include libel, that is, defamation

by written or printed words. Additionally, slander, which is defamation by spoken words, also

may be actionable *per se* under certain circumstances. For example, spoken words that injure a

plaintiff in his or her profession or trade may constitute slander *per s*e. *Neumann, v. Liles*, 358

Or. 706, 711 (2016).

Defendant argues Plaintiff's defamation claim must fail because she has "not provided

actual evidence of any false or defamatory statement published by USAA CIC." ECF 63 at 34.

"To establish a claim for defamation, a plaintiff must show that a defendant made a defamatory

statement about the plaintiff and published the statement to a third party." *Neumann*, 358 Or. at

711. Plaintiff cannot make this showing.

In her Complaint, Plaintiff alleges Defendant communicated to third parties that Plaintiff

has engaged in "concealment, misrepresentation, or fraud." ECF 1-1 at ¶ 28. However, to date,

Plaintiff has not provided actual evidence of any false or defamatory statement published by

Defendant. Plaintiff points only to communications from USAA Savings Bank and USAA

Federal Savings Bank, both dated December 28, 2018, which indicated those entities were closing Plaintiff's respective credit card and checking accounts. ECF 56 at ¶¶ 35–36. USAA Savings Bank elected to close Plaintiff's credit card account "due to unacceptable behavior or activity." *Id.* at ¶ 35. Further, Plaintiff notes Defendant's Claim Documents show that it was communicating its investigatory findings to the National Insurance Crime Bureau (NICB). However, the precise contents of those communications remain unknown. *See* ECF 71 at 81 (noting "CM to update NICB/DOI,""NICB Updated"); ECF 71 at 83 (noting "NICB & DOI referral updated").

As stated previously, "[w]here the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *In re Oracle Corp. Sec. Litig.*, 627 F.3d at 387. Thereafter, the non-moving party bears the burden of designating "specific facts demonstrating the existence of genuine issues for trial." *Id.* A "scintilla of evidence," or evidence that is "merely colorable" or "not significantly probative," is not sufficient to present a genuine issue as to a material fact. *Anderson*, 477 U.S. at 249–50, 252. The non-moving party must show evidence from which a jury could reasonably render a verdict in its favor. *See id.* at 252.

The "scintilla of evidence" presented to the Court is not enough to create a genuine issue of material fact concerning Plaintiff's defamation *per se* claim. After the close of fact discovery, Plaintiff cannot point to any evidence in the record to concretely demonstrate that Defendant defamed her through a publicized statement to third parties. Plaintiff makes no attempt beyond the broad allegations in her Complaint to even describe the alleged statement with any degree of specificity, nor can she show why such a statement would constitute defamation *per se*, giving

rise to a presumptive special harm. No reasonable juror could render a verdict in Plaintiff's favor on this record. Summary judgment is granted for Defendant on this claim.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Partial Summary Judgment is GRANTED IN PART, and Defendant's Motion for Summary Judgment is GRANTED IN PART.

**IT IS SO ORDERED**.

DATED this 7th day of January, 2021.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge